NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HARRISON DILLARD, *et al.*, | Civil Action No.: 19-19089 |
| Plaintiffs, | |
| v. | **OPINION** |
| MORRIS COUNTY PROSECUTOR'S OFFICE, *et al.*, | |
| Defendants. | |

**CECCHI, District Judge.**

This matter comes before the Court by way of Defendants' motions to dismiss Plaintiffs' complaint (ECF Nos. 15, 16, 17, 18, 19, 21, 22). Plaintiffs oppose the motions (ECF No. 25). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the motions are **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND

### A.  Factual Background

According to the Complaint and Jury Demand (the "Complaint") (ECF No. 1), Plaintiffs Harrison Dillard ("Dillard") and Aaron King ("King") are employees of the Morris County Prosecutor's Office (the "MCPO") and the County of Morris (the "County," or, together with the MCPO, the "Entity Defendants").[1]  *See* Compl. ¶¶ 52, 64.  King is a Black male and Dillard is a

---

[1] While Plaintiffs only specifically plead that King was employed by the MCPO and the County, Compl. ¶ 64, the Complaint, viewed on the whole, suggests that King and Dillard were employees of the same entities.  Therefore, construing the allegations in the light most favorable to Dillard, as the Court must at this stage, the Court finds that Dillard has alleged that he is an employee of the MCPO and the County.

member of an unspecified "minorit[y]" group. *Id.* ¶¶ 19, 67. Collectively, they claim that over the course of their employment, "higher ranking members" of the MCPO, including Defendants Frederic M. Knapp ("Knapp"), Thomas A. Zelante ("Zelante"), John McNamara ("McNamara"), John Speirs ("Speirs"), Stephen Wilson ("Wilson"), Denise Arseneault ("Arseneault"), "and/or" Steven Murzenski ("Murzenski"), have used the performance evaluation and internal affairs processes to systematically discredit, disparage, remove from promotional consideration, punitively transfer, target for discipline, and retaliate against "minorities," including Plaintiffs. *Id.* ¶¶ 17-19, 26, 29. They further claim that there has been "a disproportionate number of minorities" who have received poor performance evaluations, been assigned to less desirable units, denied training opportunities, and passed over for promotions. *Id.* ¶¶ 20-23.

The Complaint also contains allegations specific to each Plaintiff.

### 1. Plaintiff Dillard

The Complaint alleges that during the course of his employment at the MCPO, Dillard was subjected to racist remarks, denied promotions, and retaliated against for complaining about discrimination and other employees' misconduct. *See, e.g.*, *id.* ¶¶ 25, 39-40, 44, 46. Specifically, Dillard asserts that in 2012, a co-worker referred to a Black person as a "shine" while Dillard and unnamed supervisors were present, but the supervisors took no disciplinary action. Compl. ¶ 39. Between August 2016 and May 2017, his co-workers "repeatedly referred to minorities as 'scum' and 'those people' who [they] never would want to be around" and who live in areas they "would never want to go anywhere near." *Id.* ¶ 40. On or about March 16, 2017, Dillard reported this behavior to Speirs and Murzenski, his supervisors. *Id.* ¶ 41. Rather than address his concerns, Murzenski, Speirs, and McNamara used Dillard's complaints against him to give him poor performance evaluations in 2016 and 2017. *Id.* ¶ 42.

On or about January 16, 2018, Dillard reported several incidents of insubordination and misconduct by another employee to Chief Wilson. *Id.* ¶ 44. In March 2018, Dillard alleges that Wilson threatened him with disciplinary action after Plaintiff complained that his prior complaint "was being buried." *Id.* ¶ 46. Furthermore, on April 2, 2018, Murzenski gave Dillard "the second poor performance evaluation of his career" and "deceitfully altered" evaluations that others made of Dillard. *Id.* ¶ 47.

In or about May 2018, after being skipped over for a promotion five times, "every time by a White male," Dillard filed a complaint against the MCPO with the Office of the Attorney General, Division on Civil Rights (the "Division"). *Id.* ¶ 48. The Division substantiated Dillard's complaints of discrimination and unlawful retaliation, and Dillard was eventually promoted. *Id.* ¶¶ 49-50 52. Despite his promotion, Dillard alleges that he subsequently "was sent out on loan to the New Jersey State Police as a Task Force Officer," which is "an assignment typically given to young detectives, in the beginning of their law enforcement careers." *Id.* ¶¶ 53-54.

Between January 2019 and February 2019, Plaintiff filed three additional internal affairs complaints, including two against Murzenski. *Id.* ¶¶ 56-57. On April 26, 2019, Murzenski gave Dillard a poor performance evaluation. *Id.* ¶ 58.

### 2. Plaintiff King

King alleges that he was subjected to racist remarks, unwarranted internal affairs investigations, poor performance evaluations, and that he was not permitted to resign. *See, e.g.*, *id.* ¶¶ 30-32, 34, 36-37. He further claims that Defendants "targeted [him] for discipline" because of a "perceived disability" and the fact that he sought alcohol and/or drug dependency treatment. *Id.* ¶ 87.

3

In or around September 2017, an internal affairs investigation was initiated against King for an incident that had occurred one month prior. *Id.* ¶ 31. By contrast, no action had yet been taken on an internal affairs complaint Dillard made in April 2017 against a non-Black employee. *Id.* ¶¶ 30, 32. That same month, King became "vocal about the racial disparities and racially charged hostile work environment within the" MCPO and sent a letter to Knapp describing the "hostile work environment" to which he had been subjected. *Id.* ¶ 33. According to the Complaint, the MCPO "did nothing" to address his concerns and the conduct continued. *Id.* ¶ 35. On April 25, 2018, King alleges that he was told to "'pull a chair and sit outside the room'" while White employees ate breakfast. *Id.* ¶ 37. On May 14, 2018, MCPO employee Brian Walsh allegedly showed King an arrest photograph of a Black male and said to King, "'It's like looking in the mirror, isn't it?'" *Id.* ¶ 36.

King further claims that Murzenski was permitted to retire "despite having open IA complaints against him," while the MCPO and County refused to process King's resignation due to "open IA matters." *Id.* ¶ 60. Specifically, on October 15, 2019, Plaintiff served Knapp and Chief Chris Kimker with a letter of resignation. *Id.* ¶ 61. The following day, Defendant Lisa Blain ("Blain"), the Director of Personnel, informed King that neither the MCPO nor the County would accept King's resignation letter due to pending disciplinary charges against him. *Id.* ¶ 62. He alleges that he was suspended without pay at the time of his resignation. *Id.* ¶ 64.

### B. Procedural Background

Plaintiffs filed this action on October 17, 2019, alleging: (1) ("Count I") conversion, unlawful employment practices, and violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12, the Federal Civil Rights Act, 42 U.S.C. § 1983 ("Section 1983"), and the Thirteenth Amendment to the United States Constitution, U.S. CONST. amend. XIII, on

4

behalf of King; (2) ("Count II") race discrimination under the NJLAD on behalf of both Plaintiffs; (3) ("Count III") violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A §§ 34:19-1 *et seq.*, on behalf of both Plaintiffs; (4) ("Count IV") malicious prosecution and disability discrimination under the NJLAD and Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, on behalf of King; (5) ("Count V") race discrimination under Section 1983 on behalf of both Plaintiffs; and (6) ("Count VI") negligent "and/or" intentional infliction of emotional distress on behalf of both Plaintiffs. *Id.* ¶¶ 63-99. Count I is asserted against the Entity Defendants, Knapp, Blain, and non-moving Defendants John Doe 1-5 and/or John Doe Entity 1-5 only. The remaining Counts are asserted against all Defendants except Blain.

By stipulation, the parties agreed to dismiss the Count I conversion claim with prejudice on June 11, 2020. ECF No. 37. Defendants then moved to dismiss the remaining Counts, which Plaintiffs opposed.

## II.   LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Factual allegations must support a right to relief that is more than speculative. *See Twombly*, 550 U.S. at 555. A complaint "that offers 'labels and conclusions' or .... tenders 'naked assertions' devoid of further factual enhancement,'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). The party seeking dismissal under Rule 12(b)(6) bears the burden of demonstrating that no claim

has been stated.  *See Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005).  The inquiry under Rule 12(b)(6) "is not whether plaintiff[ ] will ultimately prevail in a trial on the merits, but whether [he] should be afforded an opportunity to offer evidence in support of [his] claims."  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002).

## III.   DISCUSSION

### A.  Group Pleading

As an initial matter, Knapp, Zelante, McNamara, Speirs, Wilson, Arseneault, Murzenski, and Blain (collectively, the "Individual Defendants") argue that the Complaint must be dismissed because it contains impermissible group pleading.  The Court agrees with respect to certain claims and will dismiss all claims against the Individual Defendants, except for the Count I claims against Knapp and Blain, and the Count II and Count V claims against Speirs, Murzenski, and McNamara discussed *infra*, on the basis of improper group pleading.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Mere 'conclusory allegations against defendants as a group' which 'fail to allege the personal involvement of any defendant' are insufficient to survive a motion to dismiss."  *Bass v. Howard*, No. 19-17077, 2020 WL 1332007, at *4 (D.N.J. Mar. 23, 2020) (quoting *Galicki v. N.J.*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015)).  In other words, a complaint that "fails to separate out the liability for each defendant" will be dismissed.  *Sheeran v. Blyth Shipholding S.A.*, No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015).

Here, except as noted above, the Complaint fails to set forth the factual basis for each Individual Defendant's liability.  Throughout the Complaint, Plaintiffs generally allege conduct on the part of the "Knapp Administration" and the MCPO's "higher ranking members" collectively

6

without specifying what each Individual Defendant is alleged to have done.  As just one example, Plaintiffs assert, in conclusory fashion, that "individuals at the highest levels" of the MCPO, including Knapp, Zelante, McNamara, Speirs, Wilson, Arseneault, "and/or" Murzenski, use the internal affairs process to advance their own agendas and retaliate against minority employees, including Plaintiffs.  Compl. ¶ 29.  They plead no additional facts that would allow the Court to infer which of the Individual Defendants engaged in this conduct, when the conduct occurred, or the nature of the retaliation.  Indeed, King does not allege that any Individual Defendant was involved in his internal affairs investigations, *see* Compl. ¶¶ 31, 34, and Dillard does not assert that he was subjected to an internal affairs investigation.  Such general allegations "do[] not satisfy Rule 8, because [they do] not place Defendants on notice of the claims against each of them." *Sheeran*, 2015 WL 9048979, at \*3.  Therefore, except as specifically noted *infra*, the Court dismisses all claims against the Individual Defendants.

### B.  New Jersey Tort Claims Act

The Court will dismiss the Count IV malicious prosecution and Count VI negligent and/or intentional infliction of emotional distress claims against the Entity Defendants because Plaintiffs admittedly failed to comply with the notice requirements of the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. § 59:8-8.  Pl.'s Opp. at 26.  Under the NJTCA, a plaintiff is "forever barred from recovering against a public entity or public employee" on a tort claim if the plaintiff "failed to file the claim with the public entity within 90 days of accrual of the claim." *Id.* § 59:8-8(a).  Notwithstanding this requirement, a court may, in its discretion, permit a plaintiff to file a late notice of claim within one year of the claim's accrual, provided that: (1) "the public entity or the public employee has not been substantially prejudiced thereby"; and (2) the application for permission is "made upon motion supported by affidavits based upon personal knowledge of the

affiant" that demonstrate "extraordinary circumstances for his failure to file notice of claim" within the time prescribed or to seek leave "to file a late notice of claim within a reasonable time thereafter." *Id.* § 59:8-9.  No tort action may be filed against a public entity or employee more than two years after the claim accrues. *Id.*

Here, Plaintiffs concede that they did not file a notice of claim and do not proffer any reason for their failure to do so.  Instead, they argue that Defendants should be equitably estopped from asserting non-compliance with the NJTCA as a defense because "Defendants' conduct is so outrageous that it offends societal notions of justice, morality, and fairness."  Pl.'s Opp. at 26.  In support of their position, they rely on *Severino v. Sayreville Police Dep't*, No. 07-546, 2008 WL 5351044, at *1 (D.N.J. Dec. 22, 2008).  The *Severino* court, however, declined to apply the doctrine of equitable estoppel because the plaintiff had failed to comply with NJTCA's procedural requirements and the defendants timely raised notice as a defense.  *See* 2008 WL 5351044, at *6.  Because Defendants here have timely asserted notice as a defense and Plaintiffs have not satisfied the standard for filing a late notice of claim, the Court will not apply the doctrine of equitable estoppel.

However, because Plaintiffs assert that their tort claims accrued on October 15, 2019, *see* Pl.'s Opp. at 27, the Court retains discretion to permit the filing of a late notice of claim, N.J.S.A. § 59:8-9.  As discovery has not yet commenced, the Court concludes that the Defendants will not be substantially prejudiced by Plaintiffs' filing of a late notice of claim.  Therefore, the Court will grant Plaintiffs 14 additional days beyond the date of this Opinion and accompanying Order to apply for permission to file a late notice of claim.  The application must be made upon motion supported by affidavits demonstrating "extraordinary circumstances" in accordance with the

requirements of N.J.S.A. § 59:8-9.  Defendants may file an opposition within 14 days of the date of Plaintiffs' application.  No further briefing on the issue will be permitted.[2]

### C.  Count I (Thirteenth Amendment Claim)

Plaintiff King brings his claims under Count I against the MCPO, the County, Knapp, Blain, and non-moving Defendants John Doe 1-5 and/or John Doe Entity 1-5 only.  Compl. ¶¶ 63-72.  While the MCPO, the County, Knapp, and Blain have moved to dismiss Count I in its entirety, their briefs only address the Thirteenth Amendment and conversion claims.  *See* ECF No. 15 at 5; ECF No. 16 at 13-15; ECF No. 29 at 3-4.  Therefore, as the conversion claim has been dismissed, the Court will limit its discussion to the Thirteenth Amendment claim.[3]

Defendants argue that the Thirteenth Amendment claim must be dismissed because King has not alleged that Defendants coerced him to continue working.  *See* ECF No. 16 at 12-14; ECF No. 29 at 4.  The Court agrees.

The Thirteenth Amendment prohibits "involuntary servitude enforced by the use or threatened use of physical or legal coercion."  *United States v. Kozminski*, 487 U.S. 931, 944 (1988).  "Modern day examples of involuntary servitude have been limited to labor camps, isolated

---

[2] In addition to non-compliance with the NJTCA and improper group pleading, Defendant McNamara argues that the Count VI emotional distress claims should be dismissed on NJLAD preemption grounds, as well.  *See* ECF No. 22-1 at 8.  Only Defendant Murzenski incorporated McNamara's argument in his opening brief.  *See* ECF No. 18-1 at 3 n.3.  Although Plaintiffs did not address preemption in their opposition, the Court agrees with Defendants and will dismiss Plaintiffs' emotional distress claims against McNamara and Murzenski to the extent they are duplicative of Plaintiffs' NJLAD claims.  *See* Compl. ¶¶ 96-97 (repeating and realleging "all prior allegations" regarding Defendants' "acts and/or omissions described above" to support emotional distress claims); *Whitehead v. Cty. of Monmouth*, No. 15-5352, 2015 WL 5545552, at *3 (D.N.J. Sept. 18, 2015) (dismissing on preemption grounds emotional distress claims based on same facts as NJLAD claim).

[3] Due to the sparse allegations in the Complaint and the lack of briefing on the subject, the Court is unable to discern the factual and legal basis for the remaining claims in Count I (unlawful employment practices, NJLAD, and Federal Civil Rights Act) purportedly arising under the Thirteenth Amendment.  Therefore, such claims are dismissed.

religious sects, or forced confinement." *Steirer by Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 999 (3d Cir. 1993), *abrogated on other grounds by Troster v. Pa. State Dep't of Corr.*, 65 F.3d 1086, 1087 (3d Cir. 1995). The Complaint alleges that Defendants forced King into involuntary servitude by refusing to accept or process his resignation "and/or" by taking other unidentified action to prevent him from leaving his employment. Compl. ¶ 68. Absent is any allegation that Defendants did so through the use or threatened use of physical or legal coercion. The Thirteenth Amendment claim is therefore dismissed.

### D. Count II (Violation of NJLAD)

Defendants MCPO, the County, Speirs, McNamara, and Murzenski argue that the Count II NJLAD hostile work environment claims must be dismissed because Plaintiffs: (1) cannot rely on the continuing violation doctrine to revive claims based on untimely discriminatory acts; and (2) have not pled a *prima facie* case. *See* ECF No. 15-1 at 5-8; ECF No. 16-1 at 15-22; ECF No. 17 at 10-12; ECF No. 18-1 at 6-9; ECF No. 22-1 at 9-13. The Court disagrees that Plaintiffs have not stated *prima facie* claims, but agrees that King cannot rely on the continuing violation doctrine.

#### 1. Continuing Violation Doctrine

Generally, NJLAD claims are subject to a two-year statute of limitations. *Montells v. Haynes*, 133 N.J. 282, 292-93 (1993). The continuing violation doctrine is an "equitable exception" to this prescriptive period. *Shepherd v. Hunterdon Developmental Ctr.*, 174 N.J. 1, 6 (2002). "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir.

2013).[4]  While "[d]iscrete discriminatory acts are not actionable if time barred," *id.* at 165 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)), "non-time-barred discrete acts can be considered part of the series of separate acts that collectively create a hostile work environment, . . . thus rendering a hostile-environment claim timely under the continuing-violation doctrine," *Guessous v. Fairview Prop. Invs.*, LLC, 828 F.3d 208, 223 (4th Cir. 2016) (internal citation and quotation marks omitted).[5]  Courts consider both the subject matter and frequency of the acts in determining whether the doctrine applies.  *Mandel*, 706 F.3d at 166.[6]

Here, Plaintiffs filed this action on October 17, 2019.  Therefore, to allege a continuing violation, they must show that at least one non-discrete act comprising part of an ongoing discriminatory practice occurred on or before October 17, 2017.  The Court finds that Dillard may invoke the continuing violation doctrine as to certain acts, but King may not.

Dillard alleges that before October 17, 2017: (1) a co-worker made a derogatory remark toward a Black person in 2012 while he and unnamed supervisors were present; (2) his co-workers "repeatedly" subjected him to disparaging comments about "minorities" between August 2016 and May 2017; and (3) Murzenski, Speirs, and McNamara gave him a negative performance evaluation in 2016, where they allegedly criticized him for "not wanting to be around racists."  *See* Compl.

---

[4] While *Mandel* involved, *inter alia*, a Title VII hostile work environment claim, the Court finds its analysis instructive here.  Courts apply the Title VII continuing violation standard to NJLAD hostile work environment claims, *see Makse v. Spirit Airlines, Inc.*, No. 09-2392, 2011 WL 1205484, at *3 (D.N.J. Mar. 28, 2011), and the elements of both claims "closely resemble" one another, *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001).

[5] Discrete discriminatory acts include "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, wrongful accusation." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).

[6] Acts involve the same subject matter when they "constitute the same type of discrimination." *Mandel*, 706 F.3d at 166.

¶¶ 39-40, 42.[7]   After October 17, 2017, Dillard alleges this racially discriminatory conduct continued.  Specifically, he claims that: (1) he was passed over for a promotion on five separate occasions; (2) Speirs and McNamara gave him a negative performance evaluation in 2017 and Murzenski gave him negative performance evaluations in 2017, 2018, and 2019; and (3) he was given undesirable assignments.  *See* Compl. ¶¶ 42, 47-48, 54, 58.

As the 2016 and 2017 pre-limitations comments concerned the same subject matter as the timely acts, and the complained-of conduct amounts to more than isolated incidents, the Court finds that Dillard may invoke the continuing violation doctrine as to those remarks.[8]  The doctrine does not apply to the 2016 performance evaluation because it is a discrete act and therefore time-barred.  *See O'Connor*, 440 F.3d at 127 (noting that discrete acts include "wrongful discipline"); *Mandel*, 706 F. 3d at 165 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges") (internal citation and quotation mark omitted).[9]

With respect to King, the Complaint specifically alleges that prior to October 17, 2017, he was subjected to an unwarranted internal affairs investigation in or about September 2017 because

---

[7] In Paragraph 42, the Complaint alleges that Dillard received negative performance evaluations in both 2016 and 2017.  Compl. ¶ 42.  While the Complaint does not specify the date on which Dillard received his 2017 evaluation, the Court construes the allegations in the light most favorable to him and finds that the 2017 allegation is timely at this early pleading stage.

[8] The Court need not reach the parties' arguments regarding the 2012 comment at this early stage because it is clear that the doctrine applies to at least some of the alleged pre-limitations remarks, and those remarks, coupled with the within-limitations acts, are sufficient to state a claim for hostile work environment.

[9] McNamara relies on *Mandel* to argue that the continuing violation doctrine does not apply to Dillard's claims because the pre-limitations and timely acts were perpetrated by different individuals.  ECF No. 22-1 at 11.  This argument is unpersuasive.  *Mandel* does not foreclose application of the doctrine where different perpetrators are involved, and the *Mandel* district court expressly rejected this contention on remand.  *See Mandel v. M & Q Packaging Corp.*, No. 09-0042 2013 WL 1899809, at *8 (M.D. Pa. May 7, 2013).

of his race.  *See* Compl. ¶ 31.  Wrongful disciplinary actions and wrongful accusations, however, constitute discrete acts that must be brought within the limitations period.  *O'Connor*, 440 F.3d at 127.  Therefore, because the internal affairs investigation occurred outside of the limitations period, King may not rely on it to support his hostile work environment claim.

### 2. *Prima Facie* Case

The Court next addresses whether Plaintiffs have alleged a *prima facie* case for hostile work environment.  To establish a *prima facie* claim for hostile work environment under the NJLAD, Plaintiffs must show that: "'(1) [they are] in a protected class; (2) [they were] subjected to conduct that would not have occurred but for that protected status; and (3) that it was severe or pervasive enough to alter the conditions of employment.'"  *Church v. Sears Holding Corp.*, 605 F. App'x 119, 125 (3d Cir. 2015) (quoting *Victor v. State*, 203 N.J. 383 (2010)).  To determine whether the conduct at issue is "severe or pervasive," the Court must consider "'the totality of the relevant circumstances,' including: '(1) the frequency of all the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.'"  *Id.* at 125 (quoting *Godfrey v. Princeton Theological Seminary*, 196 N.J. 178 (2008)).

Here, Defendants primarily argue that neither Plaintiff has satisfied his *prima facie* burden because the alleged discriminatory acts are not severe or pervasive.  With respect to Dillard, the Court finds that he has stated a claim for hostile work environment.  As detailed above, Dillard alleges that he has been subjected to a pattern of racially discriminatory conduct over several years.  This alleged racially-motivated conduct included repeated derogatory remarks by colleagues, undesirable assignments, denials of promotions, and negative performance evaluations.  He further alleges that his complaints of discrimination were substantiated by the Division.  Even

13

disregarding the 2012 comment and 2016 negative performance evaluation, the Court concludes that Dillard has alleged, at this early stage of the litigation, sufficiently severe or pervasive conduct under the totality of the circumstances. *See Toscano v. Borough of Lavallette*, No. 04-4412, 2006 WL 1867197, at *7 (D.N.J. June 30, 2006) (noting that "'a discrimination analysis must concentrate . . . on the overall scenario'") (quoting *Caver v. City of Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005)).

With respect to King, the Court finds that he has satisfied his *prima facie* burden.  King alleges that over the course of his employment, he was subjected to overtly racist conduct. Specifically, on April 25, 2018, King asserts that he was told to "pull a chair and sit outside the room" while White employees ate breakfast.  Compl. ¶ 37.  The following month, on May 14, 2018, an MCPO employee allegedly showed King an arrest photograph of a Black male and remarked, "'It's like looking in the mirror, isn't it?'"  *Id.* ¶ 36.  He further asserts that after he reported racially discriminatory conduct to the MCPO, the MCPO "did nothing" and the conduct continued through October 2019, when he attempted to resign "as [a] result of the hostile work environment."  *Id.* ¶¶ 33-34, 61.  According to the Complaint, King was not permitted to resign due to disciplinary charges pending against him, while Murzenski was allowed to resign despite having "open IA complaints."  *Id.* ¶¶ 59-62.  Drawing all reasonable inferences in King's favor, the Court finds that, based on the totality of the circumstances, King has met his burden at this early pleading stage.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22-23 (1993) (noting that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances" and is not "a mathematically precise test").

The Court also concludes that a sufficient basis exists for imputing liability to the Entity Defendants.  Under the NJLAD, "vicarious liability exists when an employer knew, or should have

known, about the harassing conduct and failed to take remedial action." *Deresky v. B.J. McGlone & Co.*, No. 14-1930, 2018 WL 3425731, at *7 (D.N.J. July 16, 2018) (internal citation omitted). Here, both Plaintiffs allege that when they notified the MCPO of the discriminatory conduct, their complaints were disregarded and the conduct continued. *See, e.g.*, Compl. ¶¶ 34-35, 41-42. Moreover, Dillard alleges that even after filing a complaint against the MCPO with the Division, which the Division substantiated, he continued to be subjected to racially discriminatory conduct. On these allegations, Plaintiffs have sufficiently asserted a basis for vicarious liability.

### 3. Aiding and Abetting Liability

Having concluded that Plaintiffs may proceed on their hostile work environment claims, the Court next considers whether any of the Individual Defendants may be held liable for aiding and abetting the discrimination. The NJLAD makes it unlawful for an employee "to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the statute], or to attempt to do so." N.J. Stat. Ann. § 10:5-12(e). "[I]n order to hold an employee liable as an aider or abettor, a plaintiff must show that (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004) (quoting *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)) (international quotation marks omitted)).[10]

---

[10] To determine whether an employee "substantially assist[s]" a violation, courts consider the following factors: "(1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted harassment, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor." *Tarr*, 181 N.J. at 84.

Here, Dillard has sufficiently alleged aiding and abetting claims against Speirs, Murzenski, and McNamara.  Dillard claims that he personally reported racially discriminatory behavior in the workplace to Speirs and Murzenski, his supervisors, and that McNamara otherwise had knowledge of his complaints.[11]   Rather than address his concerns, the Complaint alleges that Speirs, Murzenski, and McNamara affirmatively used Dillard's complaints against him in the performance evaluation process.  Dillard also claims that Murzenski altered evaluations that others made of Plaintiff.  Viewing the allegations in the light most favorable to Dillard, the Court is satisfied that he has sufficiently alleged aiding and abetting claims as to these three Individual Defendants.

The Court dismisses Dillard's aiding and abetting claim against Wilson because the Complaint does not allege facts showing that Wilson substantially aided the discrimination.  From what the Court can discern, the Complaint alleges that Wilson threatened Dillard with disciplinary action after he reported another employee for unspecified misconduct and insubordination.  There is no allegation that Wilson knew of Dillard's complaints of discrimination.  Therefore, because the Complaint does not allege that Wilson aided and abetted the "principal violation" of race discrimination, the Court dismisses this claim.

By contrast, the Court finds that King has not sufficiently alleged an aiding and abetting claim against any Individual Defendant.  Even drawing all reasonable inferences in King's favor, the only complained-of conduct that he attributes to an Individual Defendant involved his September 2017 letter to Knapp and October 2019 letter of resignation to Knapp.  Specifically, King claims that he notified Knapp by letter in September 2017 that he had been subjected to a

---

[11] Although Dillard does not affirmatively plead that McNamara was his supervisor, he does allege that McNamara, along with his supervisors Speirs and Murzenski, used his complaints of discrimination to give him poor performance evaluations.  Thus, construing the Complaint in the light most favorable to Dillard, the Court infers from these allegations that McNamara was a supervisory employee.

hostile work environment.  In October 2019, he notified Knapp that he was resigning "as [a] result of the hostile work environment."  Compl. ¶ 61.  While "claims of inaction may be actionable under the NJLAD," a plaintiff must show that "the inaction 'rises to the level of providing substantial assistance or encouragement.'"  *Randall v. Rutgers, State Univ. of N.J.*, No. 13-07354, 2014 WL 6386814, at *4 (D.N.J. Nov. 14, 2014) (quoting *Failla v. City of Passaic*, 146 F.3d 149, 158 n.11 (3d Cir.1998)).  Here, the Complaint does not allege any affirmative conduct on the part of Knapp, and there are no other specific allegations that would allow the Court to infer that Knapp substantially assisted or encouraged the discrimination.  Thus, King's aiding and abetting liability claims are dismissed. [12]

### E.  Count III (Violation of CEPA)

The Court next considers whether Plaintiffs have plausibly pled retaliation claims under CEPA.  To establish retaliation, a plaintiff must show: "(1) the plaintiff reasonably believed the employer's conduct violated a law or regulation; (2) the plaintiff performed 'whistle-blowing activity' as defined in CEPA; (3) an adverse employment action has been taken against [him]; and (4) the whistle-blowing activity caused such adverse employment action."  *Martone v. Jet Aviation Flight Servs. Inc.*, No. 19-21011, 2020 WL 3969919, at *3 (D.N.J. July 13, 2020) (internal citation omitted).  Covered "whistle-blowing activity" includes an employee's disclosure "to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes . . . is in violation of a law."  N.J.S.A. § 34:19-3(a).  The Third Circuit has stated that "in order for actions to qualify under CEPA, they must have impacted on the employee's compensation or rank or be virtually equivalent to discharge."  *Fraternal Order of Police, Lodge*

---

[12] Plaintiffs have not asserted aiding and abetting claims against Blain, and the aiding and abetting claims against the remaining Individual Defendants fail due to the group pleading defects discussed *supra*.

*1 v. City of Camden*, 842 F.3d 231, 241 (3d Cir. 2016) (internal citation and quotation marks omitted).[13]  CEPA claims are subject to a one-year statute of limitations.  N.J.S.A. § 34:19-5.

King's retaliation claim must be dismissed because the Complaint does not plausibly allege a causal connection between his protected activity and an adverse employment action.  King claims that he engaged in protected activity in September 2017 by reporting workplace discrimination to Knapp.  The only timely alleged adverse action, however, occurred more than two years later in October 2019, when King was suspended without pay.  These events, without more, are too temporally distant to support a finding of causation.  *See Perry v. Lee*, No. 19-17899, 2020 WL 3396805, at *7 (D.N.J. June 19, 2020) (finding one-year period between protected activity and adverse action "tend[ed] to negate any inference of causation").  Furthermore, Plaintiff cannot rely on the allegations that he was subjected to "unwarranted internal affairs investigations and poor performance evaluations" to satisfy the adverse employment action element.  Compl. ¶ 34.  First, these bald assertions are plainly insufficient under Federal Rule of Civil Procedure 8.  *See* Fed. R. Civ. P. 8.  Second, there is no allegation that these actions impacted his compensation or rank or were equivalent to a discharge.  Therefore, King's CEPA claim is dismissed.

The Court also dismisses Dillard's CEPA claim.  Dillard alleges that he was denied a promotion on five occasions after reporting discrimination and other misconduct.  Although the Complaint is sparse on details, the Court can only infer that these denials occurred sometime before May 2018, the month that Dillard filed a complaint with the Division.  *See* Compl. ¶ 48 ("In or

---

[13] The Court acknowledges Plaintiffs' citation to *Green v. Jersey City Bd. of Educ.*, 177 N.J. 434, 448 (2003), in which the New Jersey Supreme Court found that an "adverse employment action" under CEPA may include "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct."  However, in view of the Third Circuit's more recent decision in *Fraternal Order of Police, Lodge 1*, the Court will apply the definition employed by the Third Circuit.

around May 2018, after having been skipped for Captain five times, . . . Dillard lodged a complaint against the [MCPO] with the [Division]"). As these adverse actions occurred more than one year before Dillard filed this civil action on October 17, 2019, they cannot form the basis of his CEPA claim. *See* N.J. Stat. Ann. § 34:19-5 (providing for one-year statute of limitations). Moreover, Dillard's allegations regarding poor performance evaluations, threatened disciplinary action, undesirable assignments, and racist remarks do not qualify as "adverse employment actions" because he does not claim they affected his compensation or rank[14] or were equivalent to a discharge. Thus, Dillard's CEPA claim is dismissed.

### F. Count IV (Disability Discrimination Under the ADA and NJLAD)

The Entity Defendants argue that King's Count IV disability discrimination claims must be dismissed because King has failed to state a *prima facie* claim under either the ADA or NJLAD. The Court agrees.[15]

ADA and NJLAD disability discrimination claims are analyzed under the same framework. *See Victor v. State*, 203 N.J. 383, 416 (2010). To state a claim for discrimination under both statutes, "a plaintiff must allege that: (1) he is a disabled person within the meaning of the ADA [and NJLAD]; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Brown v. City of Long Branch*, 380 F. App'x 235, 238 (3d Cir. 2010) (internal citation and quotation marks omitted). An "adverse employment

---

[14] While the Complaint alleges that being sent out "on loan" was "an assignment typically given to young detectives, in the beginning of their law enforcement careers," it does not allege that this assignment impacted his rank. Compl. ¶ 55.

[15] In addition to the group pleading defects noted above, King's ADA claims against seven of the Individual Defendants must fail because "[t]he ADA does not create private causes of action against individuals." *Owens v. Armstrong*, 171 F. Supp. 3d 316, 331 (D.N.J. 2016).

action" means an action that is "'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"  *Whitehead v. Cty. of Monmouth*, No. 15-5352, 2015 WL 7776896, at *3 (D.N.J. Dec. 2, 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)).  "Both the ADA and NJLAD afford protections to a person who does not have a disability, but is 'perceived as' or 'regarded as' having a disability."  *Dennis v. Cty. of Atl. Cty.*, 863 F. Supp. 2d 372, 378 (D.N.J. 2012) (citing 42 U.S.C. § 12102(3)(A), N.J.A.C. 13:13–1.3).

Here, King's disability discrimination claim is based on a one-sentence conclusory paragraph in the Complaint.  Specifically, the Complaint alleges that Defendants failed to provide him with "reasonable accommodations," "targeted him for discipline" by subjecting him to "internal affairs investigations, causing [him] to be placed in a State Police database and/or registry," and taking other unspecified "administrative actions" against him because of an unidentified "perceived disability" and for "seeking alcohol and/or drug dependency treatment." Compl. ¶ 87.  Even assuming that King has alleged a covered disability, the Complaint lacks specific factual allegations regarding his duties, whether he requested an accommodation, his ability to perform the essential functions of his job with or without an accommodation, or a causal connection between a covered adverse action and the alleged discrimination.  *Gist v. Princeton Healthcare Sys.*, No. 14-6449, 2015 WL 4619518, at *3 (D.N.J. July 31, 2015).  As King cannot rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," the Court grants the Entity Defendants' motion to dismiss the ADA and NJLAD disability discrimination claims.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Furthermore, to the extent King brings a retaliation claim under the ADA and NJLAD, that claim is dismissed, as well.  "To state a claim for retaliation under the ADA or NJLAD, Plaintiff

must first show 1) that []he requested a reasonable accommodation, 2) that []he suffered an adverse employment action, and 3) a causal connection between the two events." *Adesanya v. Novartis Pharm. Corp.*, No. 13-05564, 2016 WL 4401522, at *7 n.13 (D.N.J. Aug. 15, 2016) (citing *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004)). Here, the Complaint lacks sufficient factual detail to satisfy any of the *prima facie* elements. Thus, King has not stated a claim for retaliation.

### G.  Count V (42 U.S.C. Section 1983)

The MCPO, the County, Speirs, Murzenski, and McNamara argue that Count V must be dismissed because neither Plaintiff has adequately alleged a constitutional violation under Section 1983. The Court disagrees.

Plaintiffs claim that they were subjected to a racially hostile work environment in violation of Section 1983. *See* Compl. ¶ 91; ECF No. 25 at 20-22. Generally, Section 1983 claims require proof: "(1) [of a] violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed or caused by a person amenable to suit under § 1983 and acting under color of state law." *Holley v. Port Auth. of N.Y. & N.J.*, No. 14-7534, 2018 WL 4953008, at *2 (D.N.J. Oct. 12, 2018) (internal citations omitted). Where the right involved is the denial of equal protection, a plaintiff must "prove the existence of purposeful discrimination" and "demonstrate that they received different treatment from that received by other individuals similarly situated." *Ugorji v. N.J. Envtl. Infrastructure Tr.*, No. 12-5426, 2014 WL 2777076, at *4 (D.N.J. June 19, 2014).

"Within this framework, a plaintiff can . . . advance a hostile work environment claim under the Fourteenth Amendment." *Holley*, 2018 WL 4953008, at *2. To establish a hostile work environment, a plaintiff must demonstrate: "(1) that he or she suffered intentional discrimination

because of race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) a basis for personal liability." *Rayfield v. City of Paterson*, No. 17-5144, 2018 WL 2859528, at \*7 (D.N.J. June 11, 2018).

Here, the Court's analysis of Plaintiffs' NJLAD hostile work environment claims applies equally to the first four elements of their Section 1983 hostile work environment claims. *See Hanani v. State of N.J.*, No. 03-3111, 2005 WL 1308231, at \*15 (D.N.J. May 31, 2005), *aff'd sub nom. Hanani v. State of N.J. Dep't of Envtl. Prot.*, 205 F. App'x 71 (3d Cir. 2006) (analyzing NJLAD and Section 1983 hostile work environment claims under same framework).  As set forth above, Plaintiffs have sufficiently alleged that they were subjected to intentional severe or pervasive discrimination based on race.  With respect to Dillard, the Complaint alleges that over the course of his employment, he was denied five promotions "every time by a White male," subjected to racial remarks, and given poor performance evaluations and undesirable assignments after complaining of discrimination.  Compl. ¶¶ 25, 40-42, 48, 53-54.  It is clear that Dillard was detrimentally affected by this conduct because he alleges that he raised both internal and external complaints about discrimination in the workplace.  Moreover, given the nature of the allegations, which include allegations of overtly racist conduct, and the fact that the Division allegedly substantiated his complaint, the Court is satisfied that the complained-of behavior would detrimentally affect a reasonable person of the same race in the same position.

Similarly, the Complaint alleges that King was subjected to overtly racist conduct throughout his employment.  According to the Complaint, in April 2018, King was told to "sit outside the room" while White colleagues ate breakfast.  *Id.* ¶ 37.  The next month, a co-worker showed King an arrest photograph of a Black male and stated that it was "like looking in a mirror."

*Id.* ¶ 36.  When King attempted to resign due to the alleged hostile work environment, he claims

that the MCPO refused to accept his resignation under the pretense that he had disciplinary charges

pending against him.  Another employee, however, was permitted to retire "despite having open

IA complaints."  *Id.* ¶ 59.  Like Dillard, it is clear that King was detrimentally affected by this

conduct because he complained about it internally.  Furthermore, the Court finds that such overtly

discriminatory conduct would detrimentally affect a reasonable person of the same race in the

same position.

As to the fifth element, both Plaintiffs have plausibly alleged a basis for liability against

the Entity Defendants.  Under Section 1983, "liability attaches to a municipality only when

'execution of a government's policy or custom, whether made by its lawmakers or by those whose

edicts or acts may fairly be said to represent official policy, inflicts the injury.'"  *Andrews v. City

of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Monell v. Dep't of Soc. Servs. of City of

N.Y.*, 436 U.S. 658, 694 (1978)).  A "custom" may include "[a] course of conduct . . . when, though

not authorized by law, such practices of state officials [are] so permanent and well settled as to

virtually constitute law."  *Id.* at 1480 (internal citations and quotation marks omitted).

Here, Plaintiffs have sufficiently alleged liability as to the Entity Defendants because they

claim to have suffered a constitutional deprivation as a result of the higher-ranking officials' course

of conduct.[16]  Specifically, the Complaint alleges that higher-ranking officials systematically use

the performance evaluation and internal affairs processes to disparage, remove from promotional

consideration, target for discipline, and retaliate against minority employees.  As a result, Dillard

---

[16] In their opposition, Plaintiffs refer to the "policy" of the Entity Defendants.  ECF 25 at 22.  A "policy" under Section 1983 requires the issuance of "an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (3d Cir. 1990) (quoting *Monell*, 436 U.S. at 694).  The Complaint does not allege any official policy.  However, viewing the allegations in the light most favorable to Plaintiffs, the Court finds that the Complaint sufficiently alleges a "custom" under Section 1983.

claims that he was passed over for promotions and his complaints of discrimination were used against him in the performance evaluation process. Furthermore, King alleges that after he complained of discrimination, his complaints were ignored, and he was not permitted to resign due to pending disciplinary charges against him. The MCPO, however, allowed another employee who had pending disciplinary charges to retire. On these allegations, the Court finds that Plaintiffs have stated Section 1983 claims against the Entity Defendants.

The Court also concludes that Dillard has stated Section 1983 claims against Speirs, McNamara, and Murzenski. An individual may be held liable under Section 1983 if there is "some affirmative conduct by the supervisor that played a role in the discrimination," which can be shown "through proof of direct discrimination by the supervisor." *Id.* at 1478 (internal citations omitted). As detailed above, the Complaint alleges that Speirs, McNamara, and Murzenski knowingly used Dillard's complaints of discrimination against him in the performance evaluation process. Because the Complaint alleges that Speirs, McNamara, and Murzenski directly participated in the alleged discrimination, Dillard has adequately alleged supervisory liability as to these three Individual Defendants.

With respect to King, the Court finds that he has not plausibly alleged supervisory liability against Knapp. An individual who has "actual knowledge and acquiescence" in discrimination may be held liable under Section 1983. *Id.* at 1478. The Third Circuit has stated that "the existence of . . . acquiescence leading to discrimination must be pled . . . with appropriate specificity." *Id.* As discussed above, King claims that he notified Knapp of the discrimination, but no action was taken and the conduct continued. While the Complaint alleges that Knapp had knowledge of the discrimination, it lacks specific allegations regarding Knapp's acquiescence. Therefore, the Court

will dismiss King's supervisory liability claim without prejudice to replead with the appropriate specificity.

### H.  Qualified Immunity

Finally, the Court finds that Speirs, Murzenski, and McNamara are not entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Bayer v. Monroe Cty. Child. & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009) (internal citation and quotation marks omitted).  The right to be free from race discrimination in the workplace "is a right that is, objectively, clearly established."  *Ugorji*, No. 12-5426, 2014 WL 2777076, at *6 (D.N.J. June 19, 2014) (citing *Andrews*, 895 F.2d at 1480).  As Dillard has sufficiently alleged that their conduct directly contributed to the racially hostile work environment he experienced, the doctrine of qualified immunity does not apply.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions are **GRANTED in part** and **DENIED in part**.  The Court grants Plaintiffs thirty (30) days from the date of this Opinion to file an amended complaint that cures the deficiencies identified herein.  An appropriate Order accompanies this Opinion.

**DATED:**   August 24, 2020

_____

**CLAIRE C. CECCHI, U.S.D.J.**